**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

ICAP SECURITIES USA, LLC, etc., et al.,

        Plaintiffs,

vs.                                                          Case No. 5:11-cv-330-Oc-32TBS

TERRY BLACKWELL, etc., et al.,

        Defendants.
_____

ICAP SECURITIES USA, LLC, etc., et al.,

        Plaintiffs,

vs.                                                          Case No. 5:11-cv-331-Oc-32TBS

FRANK MOONEY, JR., et al.,

        Defendants.
_____

## ORDER

The defendants in these two cases are unhappy investors who allegedly lost money to a Ponzi scheme. The broker who negotiated the investments for them (Perry Kleemann) worked for ICAP Capital Markets, LLC, an inter-dealer broker of complex financial instruments. After the investors' efforts to sue another ICAP entity, ICAP Securities USA, LLC, ended unsuccessfully, the investors filed arbitration claims with the Financial Industry Regulatory Authority (FINRA) against both ICAP Capital and ICAP Securities. The ICAP entities then filed these two suits (one against each set of investors), along with motions for preliminary injunction, seeking to stop the Florida FINRA arbitration from proceeding. By agreement of the parties, the arbitration matters have been stayed pending decision on the

motions for preliminary injunction in these cases. Along the way, the parties attempted to settle this dispute and the ICAP entities have filed motions to enforce a settlement agreement. The Court heard oral argument on all these matters, the record of which is incorporated by reference. Following argument, the parties made further, but unsuccessful, efforts to settle and these motions are now before the Court for decision.[1]

First, as to the motions to enforce the settlement agreements, resolution would require discovery and perhaps even an evidentiary hearing on the authority of Mr. Spivey, counsel for the investor-defendants, to make the agreement he allegedly made on behalf of his clients. Because there is another issue in the case that fully addresses the matters pending, the Court will deny the motions to enforce the settlement agreements without prejudice.

Second, as to the motions for preliminary injunction, decision turns, as it frequently does, on whether plaintiffs can show a substantial likelihood of success on the merits.[2] The ICAP entities argue they can make that showing because they will demonstrate that the investors waived any right they may have had to pursue arbitration by first pursuing this matter in court.[3] Notwithstanding a strong federal policy in favor of arbitration, a party, by

---

[1] The parties agree that this Court is an appropriate forum to decide the question of arbitrability. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-44 (1995).

[2] To secure a preliminary injunction, the moving party must demonstrate four things: (1) a substantial likelihood of success on the merits; (2) irreparable harm if the injunction does not issue; (3) that the threatened injury to the movant outweighs injury to the opposing party; (4) that the injunction will not be contrary to the public interest. See, e.g., Forsyth Cnty. v. U.S. Army Corps of Eng'rs, 633 F.3d 1032, 1039 (11th Cir. 2011); Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

[3] ICAP alternatively argues that even if the investors had not waived any rights to arbitrate, arbitration would still be unavailable because the investors are not "customers" of

its conduct, may waive its right to arbitrate. S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc., 906 F.2d 1507, 1514 (11th Cir. 1990). To establish that an arbitration right has been waived by participation in prior litigation, the moving party must show, by a heavy burden of proof, Stone v. E.F. Hutton & Co., Inc., 898 F.2d 1542, 1543 (11th Cir. 1990) (citation omitted), that the party seeking to arbitrate "substantially participate[d] in litigation to a point inconsistent with an intent to arbitrate and this participation result[ed] in prejudice to the [moving] party." Morewitz v. West of Eng. Ship Owners Mut. Prot. & Indem. Ass'n, 62 F.3d 1356, 1366 (11th Cir. 1995) (citation omitted).

Here, the investors concede that their actions in the prior litigation (which included filing the lawsuits in state court for securities laws violations and, once the suits were removed to federal court, participating in the litigation through judgment when the cases were dismissed for lack of personal jurisdiction, without ever suggesting any interest in arbitration) are inconsistent with an intent to arbitrate.[4] What the investors argue is that none

---

a member or associated member of a securities dealer or broker, which, in the absence of a written arbitration agreement, is the only way to bring a FINRA arbitration claim. Because the Court preliminarily finds the investors have waived any right they may have had to arbitrate, it need not reach the issue of whether they qualify as customers under the FINRA Rules.

[4]The lawsuits alleged that Kleemann and ICAP sold unregistered securities (Count I) as an unregistered broker (Count II). See Mooney v. Kleemann, Case No. 5:09-cv-277-Oc-10GRJ (M.D. Fla. 2009) and Blackwell v. Kleemann, Case No. 5:09-cv-278-Oc-10GRJ (M.D. Fla. 2009). Between the two sets of investors, they allegedly lost $240,000.00  Both Kleemann and ICAP filed motions to dismiss based on lack of personal jurisdiction in Florida (and on other grounds which the court did not reach). These motions were ultimately granted and judgment was entered dismissing the suits for lack of personal jurisdiction. The Report and Recommendation that the District Judge adopted in dismissing the lawsuits explained that although the investors alleged that Kleemann used ICAP's telephone and email systems to solicit the investors, they did not allege that Kleemann acted in the course

of that activity resulted in prejudice to ICAP. In this context, prejudice is measured in terms of expense and delay. See id.; S&H Contractors, 906 F.2d at 1514. For example, in S&H Contractors, the Eleventh Circuit held a contractor had waived its right to arbitrate and a coal company suffered prejudice as a matter of law where the contractor sued the coal company for breach of contract, the coal company responded with a motion to dismiss, and the parties engaged in discovery until the contractor sought arbitration eight months after having filed the lawsuit. 906 F.2d at 1508-09, 1514. See also Stone, 898 F.2d at 1543 (inferring prejudice to plaintiff where defendant waited to seek arbitration until after the Court had issued a scheduling order which required the parties to prepare their cases for trial, including

---

and scope of his employment or agency with ICAP when selling the investments and unrefuted evidence revealed that the investments were run by another company, MerrickGlen Associates, LLC, whose managing member was Kleemann.

Although ICAP Capital was not a party in the earlier lawsuits (ICAP Securities was), the investors have brought arbitration claims in Florida against both ICAP Capital and ICAP Securities and both ICAP entities are plaintiffs in the suits now before this Court. ICAP Capital and ICAP Securities are owned by the same holding company (ICAP Broking Holdings North America, LLC). Certificates of Interested Parties filed in this case, as further clarified by counsel at the hearing, reveal that both ICAP entities have their principal place of business in New Jersey and the holding company is a Delaware LLC whose members do not include any Florida citizens. The ICAP entities' arguments are one and the same and references to "ICAP," for purposes of this Order only, are to either or both ICAP Securities and ICAP Capital. The claims raised by the investors in the arbitration and in the earlier lawsuits arise out of the same soured investment negotiated by Kleemann and the claims the investors are now attempting to arbitrate are ones they either did bring in the earlier suit or are ones they could have brought but did not. (Just before their cases were dismissed the investors suggested they be given leave to amend their complaints and they now say they would have brought the claims they seek to arbitrate; no formal request for leave to amend was ever filed but in adopting the Report and Recommendation, the District Judge found the request to amend (contained for the first time in objections to the Report and Recommendation) was untimely and futile in any event because, whatever the claims, personal jurisdiction would still be lacking. See Orders, Doc. 52 in Case No. 5:09-cv-277-Oc-10GRJ and Doc. 49 in Case No. 5:09-cv-278-Oc-10GRJ.)

4

taking depositions and responding to discovery); Tok v. Royal Caribbean Cruises, Ltd., Case No. 10-20031-CIV, 2010 WL 1433175, *2 (S.D. Fla. Apr. 9, 2010) (holding that defendant's eleven months' delay before seeking arbitration, coupled with motion practice and discovery, prejudiced plaintiff); Lawrence v. Royal Caribbean Cruises, Ltd., Case No. 09-20930-CIV, 2009 WL 4546633, *4 (S.D. Fla. Nov. 30, 2009) ("conclud[ing] that defendant's active participation in state court for seven months coupled with significant discovery on the merits resulted in prejudice to plaintiff in terms of delay and incurred litigation expenses[,]" thereby resulting in waiver of right to arbitrate); In re Merrill Lynch Auction Rate Securities Litigation, Case No. 09 Civ. 6770(LAP), No. 09 MD 2030(LAP), 2010 WL 532855, *4 (S.D.N.Y. Feb. 8, 2010) (finding defendant demonstrated prejudice by having "expended significant resources in removing the state court action to federal court, moving to transfer the action [to an MDL proceeding], moving to stay the proceedings pending the MDL Panel's decision, submitting a letter addressing the perceived deficiencies in [the plaintiff's] complaint, filing an answer to the third amended complaint, and preparing to file a motion for judgment on the pleadings"), aff'd, Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 626 F.3d 156 (2d Cir. 2010). A court may further consider whether the party seeking to invoke arbitration availed itself of pre-trial procedures not available in arbitration to the prejudice of the opposing side. Citibank, N.A. v. Stok & Assoc. P.A., 387 Fed. App'x 921, 924 (11th Cir. 2010).[5]

---

[5]The investors cited some additional authority not discussed here. Those cases (none of which were from the Eleventh Circuit) are either distinguishable or would likely support a finding of waiver in these circumstances. See, e.g., PPG Indust., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107-08 (2d Cir. 1997) (affirming finding of waiver based on prejudice

5

Here, ICAP suffered the time and expense of removing the prior lawsuits to federal court; filing motions to dismiss; preparing and serving Rule 26 disclosures and amended disclosures, responding to requests for admissions, document production requests and interrogatories from the investors (some of which, according to ICAP, would not have been permitted in arbitration); serving its own interrogatories, requests for admission and document requests; taking the depositions of the investors; preparing and filing comprehensive motions for summary judgment in both cases; preparing witness and exhibit lists and a pretrial statement; and then, once the Magistrate Judge recommended that the motions to dismiss be granted, filing responses to the investors' objections. See Affidavit of Joel J. Ewusiak, filed as Doc. 3 in both cases; see also, case files and dockets for Mooney v. Kleemann, Case No. 5:09-cv-277-Oc-10GRJ (M.D. Fla. 2009) and Blackwell v. Kleemann, Case No. 5:09-cv-278-Oc-10GRJ (M.D. Fla. 2009). ICAP paid its lawyers over $75,000 for its defense over the course of the fifteen months of litigation. See Ewusiak affidavits, Doc. 3. Judgment was ultimately entered in favor of ICAP in both cases and the investors did not appeal. Instead, five months later, having never suggested any interest in arbitration throughout the fifteen months of the prior litigation, the investors filed the Florida FINRA arbitration claims ICAP now seeks to enjoin.

---

under Second Circuit standard and noting "[t]here is no bright-line rule . . . for determining when a party has waived its right to arbitration: the determination of waiver depends on the particular facts of each case"); Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc., 252 F.3d 218 (2d Cir. 2001) (finding no waiver where party invoked arbitration eight days after filing suit, before extensive litigation had taken place, and where claimed prejudice did not arise from the court proceedings but rather from the underlying facts of the case).

The investors argue that the time and expense of the litigation was not its fault because both sides had urged the court to issue rulings on early motions before the parties engaged in discovery, further motion practice, and trial preparations. Nonetheless, while earlier rulings might have minimized the delay and expense, the question is not whether that delay and expense was the fault of the investors but rather whether ICAP has been prejudiced by it. That answer is clearly yes. Furthermore, and by contrast with the above cited cases where a party sought to arbitrate in the midst of litigation, an additional prejudicial feature is present here: ICAP went through fifteen months of litigation and won judgment in its favor based on lack of personal jurisdiction in Florida, only to later be haled into a Florida arbitration forum to defend these same claims again. The Court finds ICAP is substantially likely to prove that the investors waived any right they may have had to arbitrate their claims against ICAP in Florida and ICAP is therefore substantially likely to prevail on the merits of its complaints to enjoin the FINRA arbitration the investors have initiated in Florida.[6]

Having determined that ICAP is substantially likely to prevail on the merits, the Court has no trouble finding it would be irreparably harmed if required to now expend further resources to arbitrate claims the Court has preliminarily found to be waived. Additionally,

---

[6]The motions before the Court seek to preliminarily enjoin arbitration proceedings the investors initiated in Florida. Not only does the Court find waiver to be appropriate on the facts of this case, but the earlier litigation resulted in a judgment that ICAP is not subject to personal jurisdiction in Florida, which makes the FINRA arbitration efforts in Florida seem all the more prejudicial to ICAP. At the hearing, there was some discussion of whether FINRA arbitration proceedings could be initiated elsewhere, such as New York or New Jersey. Because no such proceedings have been initiated, the Court's finding that any right to arbitration has been waived is limited to the arbitration proceedings that have actually been initiated in Florida. Nor does the Court express any opinion as to whether a new court action against ICAP might lie in either New York or New Jersey.

the harm to ICAP in allowing the arbitration to go forward would outweigh the harm to the investors in preliminarily enjoining the arbitration proceedings, particularly where the investors still have an available forum in state court (in a state in which ICAP is subject to personal jurisdiction) to bring their claims. Nor would the public interest be served in allowing the arbitration to go forward at this stage. The Court will therefore grant the motions for preliminary injunction. Because of the nature of this process, the Court does not find it appropriate to require ICAP to post a bond of any kind (no party suggested otherwise) and the requirements of Federal Rule of Civil Procedure Rule 65(c) are therefore waived. See BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC, 425 F.3d 964, 971 (11th Cir. 2005).

Accordingly, it is hereby

**ORDERED**:

1. Plaintiffs' Motions for Preliminary Injunction (filed as Doc. 2 in both cases) are **GRANTED**. Defendants Terry Blackwell and Beverly Blackwell, individually and as trustees of the Blackwell Family Trust, and Frank Mooney, Jr., Marion Mooney, and Frank Mooney, Jr., f/b/o Frank Mooney, Jr., IRA, are **PRELIMINARILY ENJOINED** from proceeding with the presently filed Florida FINRA actions until the Court reaches a final determination in these cases.

2. Plaintiffs' Motions to Enforce the Settlement Agreements (Doc. 17 in the Mooney case, No. 5:11-cv-330-Oc-32TBS and Doc. 18 in the Blackwell case, No. 5:11-cv-331-Oc-32TBS) are **DENIED** without prejudice.

3. Plaintiffs' Motions for Sanctions (Doc. 24 in the Mooney case, No. 5:11-cv-330-Oc-32TBS and Doc. 25 in the Blackwell case, No. 5:11-cv-331-Oc-32TBS) are **DENIED** without prejudice to renewal at a later point in the case if plaintiffs find it appropriate to pursue them.

4. The parties shall confer to discuss what, if any, further proceedings will be necessary to bring this matter to final decision and shall file a joint notice regarding those matters no later than **December 9, 2011**.

**DONE AND ORDERED** at Jacksonville, Florida this 14th day of November, 2011.

_____
TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:

counsel of record